**NORTH AMERICAN COAL COMPANY, Petitioner,**

v.

**William C. MILLER, Respondent,**

**and**

**Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondent.**

No. 88–3596.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) March 14, 1989.

Decided March 28, 1989.

David J. Millstone, Maria J. Codinach, Martin Harris, Squire, Sanders and Dempsey, Cleveland, Ohio, for petitioner.

Blair V. Pawlowski, Pawlowski, Creany & Tulowitzki, District No. 2 Legal Counsel, Ebensburg, Pa., for respondent William C. Miller.

Paul Frieden, Barbara Johnson, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for respondent Director, OWCP.

Before MANSMANN, GREENBERG and SCIRICA, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this appeal from the awarding to William C. Miller of black lung benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969 as amended, 30 U.S.C. § 901 *et seq.*, the North American Coal Company raises a single issue for our resolution: was North American denied its right to a fair hearing because the Administrative Law Judge refused North American's request to respond to the medical evidence relied upon by the ALJ in making

his determination? We hold that because the ALJ provided *no* opportunity for North American to respond to the medical evidence the ALJ relied upon in awarding benefits, North American's due process rights were violated and, therefore, the Benefit Review Board's decision affirming the ALJ will be vacated and the case remanded.

I.

William C. Miller was born in 1928 and began work in the nation's coal mines in 1947. In 1948 he began working for North American and continued working for them until he was laid off in 1982. Both parties stipulate, and the ALJ found, that Miller has thirty-four years of coal mine experience and has developed pneumoconiosis as a result of his coal mine employment. In addition, the ALJ found the evidence sufficient to establish Miller's total disability from pneumoconiosis pursuant to 20 C.F.R. § 718.204. Accordingly, benefits were awarded.

Medical evidence submitted prior to the hearing included three reports of examinations of Miller by Dr. Robert F. Klemens on October 26, 1982, November 16, 1982, and March 7, 1986. Dr. Klemens' examinations supported Miller's claim of total disability. North American submitted as evidence the examination of Miller by Dr. George W. Strother, dated January 14, 1983, which concluded that Miller's pneumoconiosis was not totally disabling. North American also submitted the March 12, 1986, report of Dr. Howard S. Van Ordstrand, which reviewed the 1982 reports of Dr. Klemens and Dr. Strother's report and which concluded that Dr. Strother was correct in his conclusion that Miller was not totally disabled. Dr. Van Ordstrand did not review Dr. Klemens' March 7, 1986, examination of Miller since that examination report had not been made available to North American as of the date of Dr. Van Ordstrand's report, March 12, 1986.

At the hearing, North American proffered the report of Dr. Murray D. Altose, dated March 26, 1986, which critiqued Dr. Klemens' March 7, 1986, report and concluded that Dr. Klemens' "tests were not adequately performed and the results are not acceptable for diagnostic purposes."

At the hearing held April 1, 1986, the ALJ refused to admit Dr. Altose's report, relying on 20 C.F.R. § 724.456(b)(1) which requires that "documentary material, including medical reports ... may be received in evidence ... if such evidence is sent to all other parties at least 20 days before a hearing." The twenty-day rule may be waived and evidence may be admitted at a hearing "upon a showing of good cause why such evidence was not exchanged" at least twenty days prior to the hearing. 20 C.F.R. § 725.456(b)(2). The ALJ found no such good cause and denied North American's request for a waiver.

The ALJ also denied North American's request that the record remain open for thirty days after the hearing so that North American could depose Dr. Klemens and undertake a further medical examination of Miller. The ALJ suggested to North American at the hearing that "if you do develop more medical evidence you can certainly request and to [sic] re-open the record and show good cause at that time." While suggesting that new medical evidence could be developed to re-open the record, the ALJ denied North American's requests for a new medical examination of Miller or a deposition of Dr. Klemens. These actions on the part of the ALJ, combined with his refusal to allow Dr. Altose's report into the record, left no opportunity for North American to rebut Dr. Klemens' 1986 report.

The only report cited by the ALJ for his determination that Miller was totally disabled was Dr. Klemens' 1986 examination report. The ALJ resolved the conflict between Dr. Klemens' 1982 reports and Dr. Strother's 1983 report by relying on the medical report of Dr. Van Ordstrand which agreed with Dr. Strother's findings. The ALJ credited Dr. Van Ordstrand's findings "insofar as they interpret the medical data available to him." However, since Dr. Van Ordstrand's analysis was not based on the 1986 examination performed by Dr. Kle-

mens, that report not being available to Dr. Van Ordstrand at the time of his analysis, the ALJ credited "Dr. Klemens' finding of total disability due to pneumoconiosis based on his March 7, 1986 report over Dr. Van Ordstrand's finding of no disability based on earlier evidence." The ALJ acknowledged that "Dr. Klemens' physical examination revealed no significant abnormalities and the pulmonary function tests were non-qualifying." However, "Dr. Klemens had the opportunity to fully observe and examine the Claimant at the time of [the 1986] physical examination, and evaluate his respiratory/pulmonary condition in light of the extensive occupational history and symptomatology available to him." On this basis the ALJ accepted Dr. Klemens' finding and awarded benefits. The Benefits Review Board affirmed the ALJ's determination.

As this is an appeal from a final order of the Benefits Review Board of the United States Department of Labor concerning an injury which arose in the state of Pennsylvania, we have jurisdiction under Section 21(c) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c), as incorporated by Section 422(a) of the Black Lung Benefits Act, 30 U.S.C. § 932(a).

We review the decisions of the Board for errors of law and to assure ourselves that it has adhered to its statutory scope of review. *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 162–63 (3d Cir.1986); *Walker v. Universal Terminal & Stevedoring Corp.*, 645 F.2d 170, 172 (3d Cir. 1981).

## II.

### A. *Cross-examination of Examining Physicians*

The Black Lung Benefits Act, its regulations and administrative procedures must conform to the due process requirements of the fifth amendment. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) ("procedural due process is applicable to the adjudicative administrative proceeding"); *see Pavesi v. Director, OWCP*, 758 F.2d 956, 963 n. 11

(3d Cir.1985); *United States Steel Corp. v. Oravetz*, 686 F.2d 197, 201–202 (3d Cir. 1982). The regulations governing black lung benefit hearings specifically incorporate the requirement of due process when they state: "The conduct of the hearing ... shall afford the parties an opportunity for a fair hearing." 20 C.F.R. § 725.455(c).

In 1938 the Supreme Court, in *Morgan v. United States*, 304 U.S. 1, 58 S.Ct. 773, 82 L.Ed. 1129 (1938), noted that "the right to a hearing embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them." *Id.* at 18, 58 S.Ct. at 776. *See also Ralpho v. Bell*, 569 F.2d 607, 628 (D.C.Cir.1977) ("[a]n opportunity to meet and rebut evidence utilized by an administrative agency has long been regarded as a primary requisite of due process"). The question before us is whether North American was provided an opportunity to "meet" the argument advanced by Miller when it was not allowed to rebut the medical evidence supporting Miller's claim.

In *Richardson v. Perales*, the Court examined procedural due process with respect to written reports by examining physicians offered as evidence in a social security disability hearing. While the Court acknowledged that such reports were permitted, it also determined that the party against whom such evidence is offered has a right "of confrontation and cross-examination." 402 U.S. at 405, 91 S.Ct. at 1429. This right is met when the party is provided *some* opportunity to cross-examine the reporting physician. *Id.* at 404–05, 91 S.Ct. at 1428–29.

We recently addressed the issue of the due process requirement in a social security disability case when new evidence is introduced by one party after a hearing has occurred. In *Wallace v. Bowen*, 869 F.2d 187 (3d Cir.1989), we held that:

when an administrative law judge chooses to go outside the testimony adduced at the hearing in making a determination on a social security claim, the ALJ must

afford the claimant not only an opportunity to comment and present evidence but also an opportunity to cross-examine the authors of any post-hearing reports when such cross-examination is necessary to the full presentation of the case, and must reopen the hearing for that purpose if requested.

At 193. *See also United States Pipe and Foundry Co. v. Webb*, 595 F.2d 264, 270 (5th Cir.1979) (one factor in determining reliability of written report is whether the opposing party could have obtained the reports before the hearing and could have subpoenaed the declarants). A similar opportunity must be provided when the ALJ relies heavily upon a medical report submitted with no opportunity for cross-examination when such cross-examination is necessary to the full presentation of the case. Not to do so would violate the due process rights of the aggrieved party.

Here, North American, although it did all that it could in seeking from the ALJ an opportunity to cross-examine Dr. Klemens with regard to his 1986 examination, was denied such an opportunity. Due process, therefore, requires that we vacate the judgment of the BRB; North American's request for a deposition must be granted so that it may be provided an opportunity for cross-examination of Dr. Klemens.

### B. *Rebuttal Evidence and the Twenty-Day Rule*

The requirements of the Administrative Procedure Act ("APA") are made applicable to Department of Labor black lung adjudications by the Longshoremen's and Harbor Workers' Compensation Act. *See* 33 U.S.C. § 919(d) (1982) as incorporated by 30 U.S.C. § 932(a) (1982). *See Hillibush v. U.S. Dept. of Labor*, 853 F.2d 197, 202 n. 6 (3d Cir.1988). *See also* 20 C.F.R. §§ 725.-455(b) and 725.477(b). The APA specifically requires that rebuttal evidence be permitted. "A party is entitled to present his case or defense by oral and documentary evidence, *to submit rebuttal evidence,* and to conduct such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d) (emphasis added). "While the conduct of a hearing is within the sound discretion of the administrative law judge, the judge is obliged, above all, to ensure that all parties have the opportunity to fully present their case by way of argument, proof and cross-examination of the witness." Ramsey and Haberman, *The Federal Black Lung Program—The View From the Top,* 87 W.Va. L.Rev. 575, 586–88 (1985) (citing 20 C.F.R. § 725.455(b), (c)).

In *Coughlan v. Director, O.W.C.P.,* 757 F.2d 966 (8th Cir.1983) the black lung benefits claimant submitted an x-ray and two medical reports based on the x-ray which supported his claim. After the claimant's hearing, acceding to the request of counsel for the Department of Labor, the ALJ had the x-ray re-read. The ALJ relied on this re-reading without providing the claimant with a copy of the new reading or permitting an opportunity to rebut the new reading. The court determined that "fundamental concepts of fairness require that litigants be given equal opportunities to present their respective positions," and found reversible error in the ALJ's failure to provide the claimant with an opportunity to respond to the new reading. *Id.* at 969. *Accord Souch v. Califano,* 599 F.2d 577, 580 (4th Cir.1979).

The BRB's own decision, *Shedlock v. Bethlehem Mines Corp.,* 9 BLR 1–195, presented a case remarkably similar to the one before us. In *Shedlock* the claimant timely submitted a medical report of an examination of the claimant made approximately fifty days prior to the hearing. In response the employer arranged for an examination of the claimant by a different doctor. This examination took place eighteen days prior to the hearing. At the hearing the claimant objected to the admission of the second examination citing the twenty-day rule. The BRB, while noting that the ALJ normally has broad discretion in dealing with procedural issues, remanded the case, finding the

claimant's submission of Dr. Mastrine's report just prior to the deadline imposed by the 20–day rule for submitting documentary evidence into the record, cou-

pled with the administrative law judge's refusal to allow employer the opportunity to respond to claimant's introduction of this "surprise" evidence, constituted a denial of employer's due process right to a fair hearing.

*Id.* at 1–200. Because due process, as incorporated in the APA requires an opportunity for rebuttal where it is necessary to the full presentation of a case, it was error on the ALJ's part to deny North American the opportunity to place Dr. Altose's report in the record since that report was necessary to the full presentation of Miller's case. *See* 5 U.S.C. § 556(d) (party entitled to submit rebuttal evidence); 20 C.F.R. § 725.455(c) (fair hearing required); *Wallace,* at 191–92 (opportunity to comment and respond). "Good cause" was shown as to why Dr. Altose's report did not meet the twenty-day rule and therefore his report should have been admitted. *See* 20 C.F.R. § 725.456(b)(2).

The BRB attempted in this case to distinguish *Shedlock,* asserting that here, unlike the situation in *Shedlock,* the reports of Drs. Klemens and Van Ordstrand were contemporaneous, with the implication that, therefore, they rebutted each other and as a result Dr. Altose's report was redundant. We find that Dr. Altose's report is clearly not redundant since Dr. Van Ordstrand's report critiqued *not* the 1986 report of Dr. Klemens but rather his 1982 reports. Nor did Dr. Van Ordstrand himself conduct a contemporaneous examination of Miller.[1] In this situation, the two reports were not truly contemporaneous because the examinations they relied upon were not contemporaneous. One report was based on a March, 1986 examination, the other on examinations occurring more than three years earlier.

The BRB asserts that North American could have secured an opportunity to rebut Dr. Klemens' report by making North American's "waiver of the twenty-day rule with respect to Dr. Klemens' report contingent upon the receipt of Dr. Altose's rebut-

tal and upon the provision of an opportunity to depose Dr. Klemens post-hearing." The flaw in this contention lies in the fact that the mailing of Dr. Klemens' 1986 report on March 12, 1986, met the requirements of the twenty-day rule and therefore no waiver by North American was required. The twenty-day rule provides: "Any other documentary material, including medical reports, which was not submitted to the deputy commissioner, may be received in evidence ... if such evidence is *sent* to all other parties at least 20 days before a hearing is held in connection with the claim." 20 C.F.R. § 725.456(b)(1) (emphasis added). Close scrutiny of a calendar reveals the fact that the period beginning on March 12, the day Dr. Klemens' report was mailed to North American, and ending on March 31, the day before the April 1 hearing, numbers twenty days. The submission of Dr. Klemens' report therefore did *not* violate the twenty-day rule. Consequently, North American had no leverage with which to condition the acceptance of Dr. Klemens' report on an opportunity for rebuttal. Only the ALJ could set that condition, and he refused to do so.

Miller raises the specter of a never ending series of rebuttals and rebuttals of rebuttals if we permit Dr. Klemens' 1986 report to be rebutted. Miller's argument, however, is not convincing since, while the ALJ must admit evidence "required for a full and true disclosure of the facts," the ALJ is free to exclude "irrelevant, immaterial or unduly repetitious evidence." 5 U.S. C. § 556(d).

As we emphasized in *Echo v. Director, OWCP,* 744 F.2d 327 (3d Cir.1984), the legislative history of the Black Lung Program demonstrates the intent of Congress that benefits to miners disabled by black lung disease be readily available and "liberally awarded," and that administrative practice should not serve as a barrier to the accomplishment of this intent. *Id.* at 330. Nothing in our opinion today should be taken to

---

1. We do not speculate on the due process implications had that been the case but we note that "irrelevant, immaterial, or unduly repetitious evidence" may be excluded by the ALJ. *See* 5 U.S.C. § 556(d). We also point out that the report of Dr. Klemens which North American could not rebut was of critical importance.

detract in any way from this emphasis in *Echo*. Indeed, we note that the due process safeguards applicable to black lung benefit hearings, which in this case require the remand requested by the coal company, also protect the rights of claimants.

### III.

We will vacate the judgment of the BRB because North American was afforded no opportunity for cross-examination of Dr. Klemens or for rebuttal of his 1986 report. We will remand to the BRB for action consistent with this decision.