**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3406
_____

DAVID STANLEY CONSULTANTS,
Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR; THOMAS H. PETERS
Respondents
_____

ON PETITION FOR REVIEW OF AN ORDER OF THE BENEFITS REVIEW
BOARD, UNITED STATES DEPARTMENT OF LABOR
(BRB-1: 17-0553 BLA)
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 24, 2019
_____

Before: GREENAWAY, JR., PORTER and GREENBERG, *Circuit Judges*.

(Opinion Filed: January 31, 2020)
_____

OPINION[*]
_____

GREENAWAY, JR., *Circuit Judge*.

     This is a petition for review of an award of benefits under the Black Lung Benefits

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Act, 30 U.S.C. § 901 *et seq.* Claimant Thomas H. Peters was a miner in Pennsylvania for more than thirty-three years. He applied for disability benefits on the ground that he is totally disabled due to pneumoconiosis. The Administrative Law Judge ultimately awarded benefits, and the Benefits Review Board affirmed. Employer David Stanley Consultants, as insured by Chartis Casualty Co., filed this petition for review.

For the foregoing reasons, we will deny the petition.

## I. BACKGROUND

Claimant Thomas H. Peters ("Peters") worked as a coal miner in Pennsylvania for more than 33 years. On January 31, 2012, Peters applied for disability benefits under the Black Lung Benefits Act (the "BLBA") on the ground that he suffered from totally disabling pneumoconiosis that resulted from his coal mine employment. David Stanley Consultants ("DSC") was named as a potentially liable operator[1] on January 7, 2013. When the district director issued a proposed decision denying benefits, Peters requested a formal hearing before an ALJ.

The Administrative Law Judge issued a pre-hearing order that scheduled a formal hearing for June 26, 2015. The ALJ also required the parties to exchange a pre-hearing report summarizing the documentary evidence fifty days before the hearing and to share the actual documentary evidence at least twenty days before the hearing in accordance

---

[1] An "operator" includes "[a]ny owner, lessee, or other person who operates, controls, or supervises a coal mine, or any independent contractor performing services or construction at such mine" or any other person who employs an individual in connection with transportation or construction around a coal mine "to the extent such individual was exposed to coal mine dust as a result of such employment" or who paid an individual "in exchange for work as a miner." 20 C.F.R. § 725.491.

2

with 20 C.F.R. § 725.456(a)(2). Fifty-six days before the hearing, Peters informed DSC that he would submit a medical report from Dr. Robert Cohen, who performed a pulmonary evaluation on Peters. He mailed Dr. Cohen's report to DSC on May 28, 2015. DSC received it on June 2, 2015. DSC then filed a request for an extension to conduct two pulmonary evaluations of Peters by its own medical experts, Dr. Rosenberg and Dr. Broudy. The ALJ denied this motion at the hearing on June 26, 2015, but allowed Drs. Rosenberg and Broudy to submit supplemental rebuttal reports addressing Dr. Cohen's report.

The ALJ awarded Peters benefits on December 1, 2015. DSC then appealed to the Department of Labor Benefits Review Board. Among its grounds for appeal was the ALJ's decision to deny the motion for extension. The Board affirmed in part and remanded in part. The Board affirmed the ALJ's decision to deny the motion for an extension. It also ordered the ALJ to reassess the opinion of Dr. Rosenberg, who had concluded that Peters was not totally disabled, and to make specific findings about the exertional requirements of Peters's employment and determine whether the doctors had sufficient understanding of those requirements. The Board also ordered the ALJ to determine whether DSC rebutted the presumption of clinical and legal pneumoconiosis and whether DSC rebutted the presumption of causation of total disability.

The ALJ issued a second order awarding benefits on June 8, 2017. DSC again appealed to the Benefits Review Board. On July 9, 2018 (after the parties filed their briefs before the Board, but before the Board issued its decision) DSC filed a motion for remand on the ground that Department of Labor ALJs are officers subject to the

3

Appointments Clause, and that the ALJ was not properly appointed.[2]  The Board affirmed the award on August 30, 2018.  It denied DSC's motion to remand because DSC did not raise the claim in its opening brief.

This timely petition for review followed.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 33 U.S.C. § 921(c), as incorporated by § 422(a) of the Black Lung Benefits Act, 30 U.S.C. § 932(a).

"We review the decisions of the Board for errors of law and to assure that it has adhered to its own standard of review. . . . Our review of the Board's legal determinations is plenary." *BethEnergy Mines Inc. v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 39 F.3d 458, 462–63 (3d Cir. 1994).  "[W]e independently review the record and decide whether the ALJ's findings are supported by substantial evidence. Substantial evidence has been defined as more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kowalchick v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 893 F.2d 615, 619–20 (3d Cir. 1990) (internal citations and quotation marks omitted).  We review the Board's evidentiary rulings for abuse of discretion.  *Shamokin Filler Co., Inc. v. Fed. Mine Safety & Health Review Comm'n*, 772 F.3d 330, 332 n.2 (3d Cir. 2014).  We review the Board's determination that an employer has abandoned a

_____

[2] It based this argument on the Supreme Court's decision in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018).

4

claim for abuse of discretion. *Kephart v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 701 F.2d 22, 26 (3d Cir. 1983).

### III. DISCUSSION

#### A.      DSC's Appointments Clause Challenge

DSC first argues that the award should be vacated and the claim should be remanded because the ALJ was not properly appointed under the Appointments Clause. The Appointments Clause provides that "officers of the United States" must be appointed in certain ways. U.S. Const. art. II, § 2, cl. 2. In *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), the Supreme Court held that SEC ALJs are "officers" who must be appointed in accordance with the Appointments Clause. The Department of Labor agrees that the ALJs must be appointed in accordance with the Appointments Clause, but argues that DSC forfeited this claim by failing to properly raise it before the Benefits Review Board. We agree.

At issue is whether DSC preserved its Appointments Clause claim before the Board. DSC first raised its claim in a motion to remand before the Board. The Board decided that the claim was forfeited because DSC did not raise the claim in its opening brief: "Because employer first raised its Appointments Clause argument eleven months after filing its opening brief in support of its petition for review, employer forfeited the issue." SA 130 (citing, *inter alia*, *Williams v. Humphreys Enters., Inc.*, 19 BLR 1-111, 1-114 (1995) (holding that "the Board generally will not consider new issues raised by the petitioner after it has filed its brief identifying the issues to be considered on appeal")).

5

This rule derives from 20 C.F.R. § 802.211(b), which requires that petitions for review include a supporting brief that "[s]pecifically states the issues to be considered by the Board." The Board's decision on DSC's motion accords with its regular treatment of employers' failure to raise Appointments Clause challenges in their opening briefs, including in post-*Lucia* cases. *See, e.g.*, *Tackett v. ICG Knott Cty., LLC & Am. Int'l South/Chartis*, BRB No. 18-033 BLA, 2019 WL 1075364, at *1 n.2 (Ben. Rev. Bd. 2019); *Motton v. Huntington Ingalls Indus.*, 52 Ben. Rev. Bd. Serv. (MB) 69, 69 at n.1, 2018 WL 6303734, at *1 n.1 (Ben Rev. Bd. 2018).

Our sister circuits have repeatedly held, including in post-*Lucia* cases, that a petitioner forfeits an Appointments Clause challenge if it fails to properly raise the challenge before the Board. *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 751 (6th Cir. 2019) (holding, in a post-*Lucia* Black Lung Benefits Act case, that the employer failed to exhaust its Appointments Clause challenge where it raised the challenge in a motion for reconsideration before the Benefits Review Board and stating that "if the Board does not consider a merits issue because a party failed to follow the Board's procedural rules, the party generally has not exhausted that issue for a court's review"); *Energy West Mining Co. v. Lyle*, 929 F.3d 1202, 1206 (10th Cir. 2019) (holding, in a post-*Lucia* case, that Energy West forfeited its Appointments Clause challenge by failing to raise it before the Benefits Review Board).

DSC's arguments to the contrary are unavailing. DSC primarily relies on the Sixth Circuit's opinion in *Jones Brothers, Inc. v. Secretary of Labor*, 898 F.3d 669 (6th Cir. 2018). In *Jones Brothers*, the Sixth Circuit held that Jones Brothers forfeited its

6

Appointments Clause challenge by failing to raise it before the Mine Commission. However, the court excused the forfeiture because the absence of legal authority addressing whether the Mine Commission could entertain the challenge constituted "extraordinary circumstances." *Id.* at 677–78. There is no such absence of authority here. The Board is empowered to hear Appointments Clause challenges, and has done so in cases in which such a challenge was properly raised. *See, e.g., Miller v. Pine Branch Coal Sales, Inc.*, No. 18-0323 BLA, 2018 WL 8269864, at *2–3 (Ben. Rev. Bd. Oct. 22, 2018) (en banc). In keeping with this distinction, the Sixth Circuit has since held that, in a Black Lung Benefits Act case, an employer forfeits its Appointments Clause claim under 20 C.F.R. § 802.211(b) if it fails to properly raise the claim before the Board. *See Island Creek Coal*, 937 F.3d at 754.

There are no other "extraordinary circumstances" that justify review here. That the Supreme Court decided *Lucia* after DSC filed its opening brief does not constitute such a circumstance; the Court explicitly noted that it was not creating new law in *Lucia*, but rather was applying its prior decision in *Freytag v. Commissioner*, 501 U.S. 868 (1991). *See Lucia*, 138 S. Ct. at 2053 ("*Freytag* says everything necessary to decide this case.). Likewise, its holding that "one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief" is based on its decision in *Ryder v. United States*, 515 U.S. 177 (1995). *Lucia*, 138 S. Ct. at 2055 (citing *Ryder*, 515 U.S. at 182–83) (internal quotation marks omitted). Since DSC did not make a timely challenge, we find that DSC has forfeited its Appointments Clause claim.

7

**B.      The ALJ's Denial of DSC's Request for an Extension**

DSC also argues that the ALJ abused his discretion in denying DSC's request for an extension to perform additional pulmonary evaluations on Peters. In compliance with the ALJ's scheduling order, fifty days before the hearing Peters notified DSC that he would be submitting a medical report by Dr. Cohen. Again in compliance with the scheduling order and the applicable regulations, Peters submitted that report twenty days before the hearing. *See* 20 C.F.R. § 725.456(b)(2). At that point, DSC realized that there was evidence that Peters was totally disabled and sought an extension so that its two medical experts could perform pulmonary evaluations on Peters. The ALJ denied the request. The Board affirmed.

"The Black Lung Benefits Act, its regulations and administrative procedures must conform to the due process requirements of the fifth amendment." *N. Am. Coal Co. v. Miller*, 870 F.2d 948, 950 (3d Cir. 1989); *see also* 20 C.F.R. § 725.455(c) ("The conduct of the hearing . . . shall afford the parties an opportunity for a fair hearing."). The APA provides that each party "is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d). Both parties in a Black Lung Benefits Act case are permitted to submit two chest x-ray interpretations, the results of two pulmonary function tests, the results of two arterial blood gas studies, one autopsy report, one report of each biopsy, and two medical reports under 20 C.F.R. § 725.414(a). Each party may also submit one physician's interpretation of the other party's testing. 20 C.F.R. § 725.414(a).

8

The ALJ has "discretion to guide the course of the hearing," which "includes the power to make reasonable, nonarbitrary decisions regarding the admission or exclusion of evidence for procedural reasons." *Warner-Lambert Co. v. Heckler*, 787 F.2d 147, 162 (3d Cir. 1986). To obtain relief, DSC must "make a strong showing" that the ALJ abused his discretion in making this procedural ruling. *Id.* (quoting *Montgomery v. Comm'r of Internal Revenue*, 367 F.2d 917, 920 (9th Cir. 1966)) (internal quotation marks omitted).

Contrary to DSC's claim, Dr. Cohen's report did not constitute "trial by ambush." Petitioner's Br. 49. It is undisputed that Peters submitted his report in compliance with the twenty-day deadline. It is also undisputed that DSC had over two years to perform pulmonary studies on Peters in advance of the hearing; DSC contends only that it did not realize that additional pulmonary studies would be necessary. Critically, the ALJ permitted DSC to provide rebuttal evidence in the form of supplemental reports from Drs. Broudy and Rosenberg responding to Dr. Cohen's report and methodology. *See N. Am. Coal Co. v. Miller*, 870 F.2d at 953 (holding that the ALJ erred when it did not permit the employer to submit rebuttal evidence in response to a medical report submitted by the claimant).

We see no abuse of discretion in the ALJ's decision to deny DSC's request for an extension. DSC failed to timely develop the medical evidence. DSC's right to due process does not mean that the ALJ was obligated to delay the proceedings once DSC realized that additional evidence would help its case.

9

## C. The ALJ's Determination That Dr. Rosenberg's Opinion Was Not Credible

DSC also argues that the ALJ erroneously determined that Dr. Rosenberg's opinion was not credible. Dr. Rosenberg testified that Peters was not totally disabled because, in his opinion, Peters could perform his work in a dust-free environment. The ALJ found:

> Doctor Rosenberg's opinion is similarly entitled to less weight due to his apparent lack of understanding of the exertional requirements of Claimant's usual coal mine employment. Doctor Rosenberg's opinion is further entitled to less weight for the foregoing reasons. First, Dr. Rosenberg provided little analysis to support his diagnoses and conclusions. He did not discuss why the results reinforced his determination that Claimant was not disabled. Simply stating that Claimant is not disabled because his pulmonary function and blood gas studies are non-qualifying does not constitute a well-documented and well-reasoned medical opinion. Second, Dr. Rosenberg repeatedly stated that Claimant can perform his last coal mine employment—as an underground mine examiner—but only in a dust-free environment. The Board has held that, when determining disability, the question is whether the miner is able to perform his job, not whether he is able to perform his job after he takes medication. This logic would seemingly apply to other caveats imposed by reporting physicians, as well, such that a doctor opining that a miner can perform his last coal mine employment *if* he takes medication is equivalent to a physician stating that a miner can perform his last coal mine employment *if* he wears a respirator, or *if* he is in a dust free environment. Because Dr. Rosenberg's opinion is poorly documented, poorly reasoned, and includes certain stipulations regarding the conditions under which Claimant is or is not disabled, the undersigned accordingly finds that Dr. Rosenberg's opinion does not support the finding that Claimant is able to perform his usual coal mine employment and is not totally disabled.

SA107 (emphasis in original). The Board upheld the ALJ's evaluation of Dr. Rosenberg's opinion. The Board stated that the ALJ permissibly found that Dr. Rosenberg's opinion was not well-reasoned because: 1) he did not explain why the test results reinforced his determination that Peters was not totally disabled; and 2) he

required a stipulation that Peters work in a dust-free environment and without a respirator to do his usual work.

We have held that "[t]he ALJ has broad discretion to determine the weight accorded to each doctor's opinion" and that the ALJ "may weigh the medical evidence and draw its own inferences." *Balsavage v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 295 F.3d 390, 396 (3d Cir. 2002) (quoting *Mancia v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 130 F.3d 579, 588 (3d Cir. 1997) (internal quotation marks omitted). Peters' usual coal mine employment was as a mine examiner, which required him "to rock dust, clean the coal, change the rollers, scale the roof, and hang or rehang power lines," as well as "shoveling coal" and "carrying and lifting 50 pound bags of rock dust." SA102–03. Evidently, Peters' usual work involved significant exposure to dust. DSC has not offered any support in the case law for its claim that a coal miner does not satisfy 20 C.F.R. § 718.204(b)(1) if he can perform his usual coal mining work in a dust-free environment. The regulation states that a miner is totally disabled if, in part, the impairment prevents him "[f]rom performing his or her *usual coal mine work*." 20 C.F.R. § 718.204(b)(1) (emphasis added). There is no carve out for miners who can perform their usual work with medication or other changes in their usual work circumstances. Dr. Rosenberg evidently failed to understand the requirements of Peters' usual employment. The ALJ's decision to give Dr. Rosenberg's opinion less weight is thus rational and supported by substantial evidence.

**D**.  **Whether DSC Rebutted the Presumed Presence of Clinical Pneumoconiosis**

Finally, DSC argues that, even if Peters did establish that he had clinical pneumoconiosis, DSC has sufficiently rebutted that presumption.  A party opposing entitlement under the Black Lung Benefits Act "may rebut the presumption [of total disability due to pneumoconiosis] by—(i) Establishing both that the miner does not, or did not, have: (A) Legal pneumoconiosis . . . and (B) Clinical pneumoconiosis" or by "[e]stablishing that no part of the miner's respiratory or pulmonary total disability was caused by pneumoconiosis."  20 C.F.R. § 718.305(d)(1).[3]  Critically, this regulation explicitly requires that the employer rebut the presumption by establishing that the claimant does not have *both* legal and clinical pneumoconiosis; if it fails to do so for one type, the employer has not rebutted the presumption.  A finding of pneumoconiosis may be based on chest x-rays, biopsies or autopsies, and medical opinions.  20 C.F.R. § 718.202(a).

In its brief, DSC argues only that the ALJ erred in finding that DSC did not rebut the presumption of clinical pneumoconiosis.  DSC does not challenge the ALJ's

---

[3] "Clinical pneumoconiosis" is defined as diseases "characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment.  This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment."  20 C.F.R. § 718.201(a)(1).  "Legal pneumoconiosis" is defined as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment.  This definition includes, but is not limited to, any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment."  20 C.F.R. § 718.201(a)(2).

determination that Peters had legal pneumoconiosis. Since both are required under the

regulation, DSC has not shown that the ALJ erred in deciding that DSC failed to rebut the

presumption.[4]

## IV. CONCLUSION

For the reasons set forth above, we will deny the petition.

---

[4] We also note that the ALJ's determination that DSC failed to establish that Peters has clinical pneumoconiosis is supported by substantial evidence. In deciding whether DSC rebutted the presumption of clinical pneumoconiosis, the ALJ considered both x-ray evidence and medical opinions. The ALJ determined that the x-ray evidence supports rebuttal of the presence of pneumoconiosis, but that the medical opinions submitted by DSC did not support rebuttal because the opinions were not credible: "Considering all of the evidence of record, the undersigned finds that Employer has failed to establish that Claimant does not suffer from clinical pneumoconiosis. Even though the undersigned found that the radiographic evidence in this case is more persuasive. Therefore, Employer has not rebutted the presumption of disability due to pneumoconiosis." SA110. DSC argues that this conclusion was incorrect because the ALJ found that the x-ray evidence rebutted the presumption of pneumoconiosis. However, we have held that ALJs should consider all of the evidence under 20 C.F.R. § 718.202(a) to determine whether the claimant has pneumoconiosis, not one piece of evidence in a vacuum. *Penn Allegheny Coal Co. v. Williams*, 114 F.3d 22, 24–25 (3d Cir. 1997). The ALJ correctly weighed all of the evidence in determining whether DSC established that Peters does not have clinical pneumoconiosis.