NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0042n.06

Case No. 20-3240

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 21, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MANALAPAN MINING COMPANY, INC.; CONNECTICUT INDEMNITY COMPANY, c/o Arrowpoint Capital, | ) ) ) ) | |
| Petitioners, | ) ) | ON PETITION FOR REVIEW OF THE DECISION AND ORDER OF THE UNITED STATES DEPARTMENT OF LABOR BENEFITS REVIEW BOARD |
| v. | ) ) | |
| DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS; U.S. DEPARTMENT OF LABOR; RUDY J. BURKHART, on behalf of and Widow of Lloyd Burkhart, | ) ) ) ) ) ) | OPINION |
| Respondents. | ) ) ) | |

BEFORE: ROGERS, NALBANDIAN, and MURPHY, Circuit Judges.

NALBANDIAN, Circuit Judge. This case is about Ruby[1] Burkhart's survivor's benefits. Her husband, Lloyd Burkhart, mined coal for seventeen years. During that time, he contracted black lung disease, which eventually disabled him and contributed to his death. When a coal miner disabled by black lung disease dies, his survivors can claim federal benefits. The Benefits Review Board ("BRB") adjudicates these claims, and it awarded benefits to Mrs. Burkhart. Manalapan Mining and its insurer, Connecticut Indemnity Company (together "Petitioners"), dispute that award. Their challenge is narrow. They claim only that the Constitution required the

---

[1] Because of an error at the Department of Labor, Mrs. Burkart's name in the record and our caption appears as "Rudy." But her name is "Ruby." (Respondents' Br. at 2 n.1.)

Administrative Law Judge ("ALJ") below to allow them to depose their own expert after the regulatory deadline for doing so had passed. Since nothing in the Constitution requires that accommodation, we **DENY** the petition.

## I.

Since 1972, the Black Lung Benefits Act, 30 U.S.C. §§ 901–944, has provided federal benefits to coal miners "who have been totally disabled by pneumoconiosis, a respiratory disease commonly caused by coal mine employment, and to their eligible survivors." *U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 717 (1990). Pneumoconiosis is more commonly known as black lung disease. *Brandywine Explosive & Supply v. Dir., OWCP*, 790 F.3d 657, 661 (6th Cir. 2015). If a miner can prove that he has black lung disease, that the disease arose out of his coal mine employment, that he is totally disabled, and that the disease caused his disability, then he and his survivors can claim benefits. *Id.*

The Department of Labor adjudicates these claims. A claims examiner makes the initial determination. (*See* App. at 14; App. at 27.) After this, three levels of review are available, first to an ALJ, then to the BRB, then to a federal court of appeals. *Triplett*, 494 U.S. at 717. The losing party at each stage can appeal to the next decisionmaker. *Island Creek Coal Co. v. Brown*, 937 F.3d 738, 743–44 (6th Cir. 2019).

## II.

Mr. Burkhart worked for at least twelve different coal mine operators over seventeen years. Although he eventually worked his way up to foreman, he spent years crawling through the mines on his stomach, operating heavy machinery, and manually moving coal. This was dirty work; Mrs. Burkhart ran his work clothes in separate loads when she did laundry.

Mining took a toll on his health. When he retired at around age 42, his doctors told him "he had the lungs of a 90-year-old man."[2] Mr. Burkhart treated his shortness of breath and wheezing with an inhaler and even a mechanical ventilator when needed. As his health deteriorated, Mr. Burkhart used the ventilator "24/7." (App. at 208.)

During his last four and a half years, local hospitals admitted Mr. Burkhart thirty-seven times. Sixteen of these admissions began in the emergency room, and twenty-five of them lasted multiple days. When he eventually passed away, his death certificate listed his cause of death as "acute respiratory failure seconda[ry] to [heart attack] and stroke." (S.A. at 38.) Mrs. Burkhart, his wife of forty-seven years, survived him. She was his only dependent.

Before his passing, Mr. Burkhart had filed for federal black lung benefits. Part of Mr. Burkhart's application included Dr. Esther Ajjarapu's determination that Mr. Burkhart had black lung. Three other physicians, after consulting x-rays, agreed. Petitioners contested these experts with their own, Dr. Gregory Fino. For his part, Dr. Fino opined that "Mr. Burkhart would have died as and when he did had he never stepped foot in the coal mines." (App. at 160.)

The claims examiner agreed with Mr. Burkhart's experts. Citing Dr. Ajjarapu, the claims examiner determined that Mr. Burkhart had black lung disease and awarded him posthumous benefits. After this, Mrs. Burkhart filed a successful claim for survivor's benefits. Petitioners timely requested ALJ hearings to contest the awards. Since Mrs. Burkhart's claim was derivative of her husband's, the agency consolidated them.

Department of Labor regulations govern the introduction of evidence at ALJ hearings. The regulations guarantee every party to the disputed claim the right to "participate fully." 20 C.F.R.

---

[2] To be sure, some of this may have been Mr. Burkhart's fault. He smoked a pack of cigarettes a day for fifty-five years, beginning when he was thirteen.

§ 725.452(b). The presiding ALJ has "discretion" over the presentation of evidence provided that he "afford[s] the parties an opportunity for a fair hearing." *Id.* § 725.455(c). He can reject improperly submitted evidence. *Id.* § 725.455(b).

Documentary evidence, including medical records, timely sent to the Office of ALJs will enter evidence, subject to objections. *Id.* § 725.456(a). Certain documents shared with the other parties twenty or more days before the hearing may enter evidence, subject to objections. *Id.* § 725.456(b)(2). Thirty days' notice is required before a deposition, and all depositions must occur before the hearing, unless the ALJ allows otherwise. *See id.* § 725.458. Any party may present expert testimony, including from a physician, at the hearing if they give ten days' notice. *Id.* § 725.457(a). "The record of a hearing closes when the hearing concludes, unless the [ALJ] directs otherwise." 29 C.F.R. § 18.90(a). "No post-hearing deposition . . . shall be permitted unless authorized by the administrative law judge." 20 C.F.R. § 725.458.

The ALJ's pre-hearing order, issued May 2017, advised the parties about most of these regulations. And it made his expectations for discovery clear: "Discovery, including depositions, will begin immediately and, absent good cause, must be completed no later than 20 days before the hearing."[3] (S.A. at 8, 12.) Without an applicable exception, "no evidence will be admitted unless it is identified and exchanged **20 calendar days** or more before the hearing." (*Id.* at 13 (emphasis in original).) The ALJ explicitly reserved his ability to deny "[a]ny motion made to submit any evidence within 20 calendar days of the hearing or subsequent to the hearing that does not indicate the consent of the opposing party to the untimely submission." (*Id.*) He also said that

---

[3] Even before the ALJ contacted the parties, the Department of Labor's docketing notice advised them that a failure to comply with evidentiary procedures could lead to the exclusion of evidence. The parties received this document in February 2017, more than three months before the ALJ's pre-hearing order.

he would wait to address motions made within twenty-one days of the hearing at the hearing. The "exclusion of evidence" was a possible consequence of violating the order. (*Id.* at 16.) If the proffered timeline was inconvenient for counsel, they could request a continuance for an "existing conflict" or a postponement for "good reasons." (*Id.* at 9, 17.) The order set the hearing for October 31, 2017.

So the parties knew their hearing date more than five months in advance. Mrs. Burkhart submitted her evidence in early September, fifty-five days before the hearing. Petitioners also timely filed their documentary evidence, but they failed to obtain a deposition from Dr. Fino. Petitioners did not receive Dr. Fino's expert report until October 10, 2017. This made it impossible for Dr. Fino to sit for a deposition, which would require thirty days' notice; the hearing was only twenty-one days away. *See* 20 C.F.R. § 725.458.

So Petitioners moved to take Dr. Fino's deposition after the hearing. In keeping with his pre-hearing order, the ALJ acknowledged the filing, which he intended to address at the hearing. After observing that Dr. Fino's expert report was in the record, Petitioners' counsel asked the ALJ "for time to depose [Dr. Fino] post hearing." (App. at 203.) The ALJ declined, telling counsel that his "request for post-hearing deposition is denied. The rules are pretty clear on not allowing them. I generally don't allow the post hearing depositions at all, absent extraordinary circumstances." (*Id.* at 204.)

Undeterred, Petitioners moved for reconsideration. That motion broadly argued that because neither Mrs. Burkhart nor the Board objected to the post-hearing deposition, because other regulations contemplate the introduction of evidence after a hearing, and because the ALJ could do so, the ALJ should allow the deposition. The ALJ denied the motion in a written order, citing the Petitioners' failure to explain why a fair hearing required Dr. Fino's deposition, or why they

had not taken reasonable steps to procure the deposition before the hearing. Ultimately, the ALJ awarded benefits to Mr. and Mrs. Burkhart. The BRB upheld the awards on appeal.

The BRB also affirmed the ALJ's denial of Petitioners' motion for a post-hearing deposition. Whether this denial was constitutional is the only issue Petitioners raised in their opening brief to us, so it is the only issue we consider. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("[A]rguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.").

### III.

We review an ALJ's exclusion of evidence for abuse of discretion. *N.L.R.B. v. Jackson Hosp. Corp.*, 557 F.3d 301, 305–06 (6th Cir. 2009); *see also Appleton & Ratliff Coal Corp. v. Ratliff*, 664 F. App'x 470, 477 (6th Cir. 2016). "An abuse of discretion exists when the [ALJ] applies the wrong legal standard." *B & G Mining, Inc. v. Dir., OWCP*, 522 F.3d 657, 661 (6th Cir. 2008). We will deny the petition unless Petitioners show that excluding Dr. Fino's deposition prejudiced them. *See* 5 U.S.C. § 706(2)(B); *Karst Robbins Coal Co. v. Dir., OWCP*, 969 F.3d 316, 329–30 (6th Cir. 2020).

### IV.

The Fifth Amendment's Due Process Clause states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. This protection applies to ALJ proceedings. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) ("[P]rocedural due process is applicable to [] adjudicative administrative proceeding[s]").

Petitioners argue that the ALJ abused his discretion and denied them due process by closing the record before they could depose Dr. Fino. At bottom, they make two arguments. First, they argue that the ALJ prejudiced them by misstating the governing standard when he denied their

motion at the hearing.  And second, they argue that *North American Coal Co. v. Miller*, 870 F.2d 948 (3d Cir. 1989), a Third Circuit case, is persuasive authority that should guide our decision. Neither argument convinces us.

A.

First, Petitioners argue that the ALJ misstated, and then misapplied, the governing standard when he denied their motion at the hearing.  In his breezy denial of Petitioners' motion during the hearing, the ALJ said "[t]he rules are pretty clear on not allowing [post-hearing depositions]." (App. at 204.)  And he continued, stating that he generally didn't allow post-hearing depositions "absent extraordinary circumstances."  (*Id.*)  Petitioners contend that this "misreading and misapprehension of the controlling regulation" deprived them of due process.  (Petitioners' Br. at 12, 19, 20.)  The relevant regulations, they rightly point out, explicitly contemplate post-hearing depositions, and there is no "extraordinary circumstances" requirement.  20 C.F.R. § 725.458.

But that same regulation gives ALJs discretion over whether to allow post-hearing depositions.  *Id.* ("No post-hearing deposition or interrogatory shall be permitted unless authorized by the [ALJ] upon the motion of a party to a claim.")  The ALJ exercised this discretion at the hearing, denying Petitioners' motion.

So Petitioners moved for reconsideration.  This time, the ALJ didn't provide an immediate answer.  Instead, he considered the issue for over a month before responding with a five-page written order that cited controlling authority from the BRB.  In *Lee v. Drummond Coal*, 6 BLR 1-544 (1983), the BRB held that the moving party has "the burden of establishing the necessity of" the post-hearing deposition it is seeking.  *Id.* at 1-547.  The movant must show that "the proffered deposition would be probative, and not merely cumulative," that they "took reasonable steps to secure the evidence before the hearing," and that "the evidence is reasonably necessary to ensure

a fair hearing." *Id.* at 1-547, 1-548. The ALJ determined that Petitioners had not satisfied the second and third elements, and he reaffirmed his denial of Dr. Fino's post-hearing deposition.

To avoid reversal, the ALJ need only show the reviewing court that he applied the correct legal standard. *See Hayden v. Barnhart*, 374 F.3d 986, 988 (10th Cir. 2004) (per curiam). We have found reversible error where the ALJ has paid lip service to the correct standard before applying the wrong one. *See, e.g.*, *Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 599–601 (6th Cir. 2014). But we have upheld ALJ decisions applying the wrong standard where the error was harmless. *See, e.g.*, *Belcher v. Dir., OWCP*, 895 F.2d 244, 246 (6th Cir. 1989).

Nothing suggests that the ALJ applied the wrong standard. Petitioners had more than eight months to introduce their evidence before the hearing, including five after the ALJ set the hearing date. They have never claimed that there was an issue getting the relevant records to Dr. Fino or that an intervening event made it impossible for him to submit his report in time to sit for a pre-hearing deposition. And Petitioners still had eleven days after they received his report, during which they could have chosen to have Dr. Fino testify at the hearing. *See* 20 C.F.R. § 725.457(a). These failures show that Petitioners did not take reasonable steps to ensure Dr. Fino's deposition before the hearing. And because Dr. Fino had over a month to review the full record before he filed his report, he has not shown that his deposition was necessary to ensure a fair hearing. "Given the record before us, requiring the [P]etitioner[s] to comply with the time limits set out in the regulations does not violate principles of due process." *Jordan v. Dir., OCWP*, 892 F.2d 482, 489 (6th Cir. 1989) (citation and internal quotation marks omitted). At worst, application of the correct legal standard to Petitioners' motion was delayed. But it was not denied.

Even if it were, Petitioners would still have to show that the adverse ruling prejudiced them. *See Karst Robbins Coal*, 969 F.3d 316 at 329–30. An ALJ's application of a procedural rule

8

"adopted for the orderly transaction of business" "is not reviewable except upon a showing of substantial prejudice to the complaining party." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *Am. Farm Line v. Black Ball Freight Serv.*, 397 U.S. 532, 539 (1970)). Because the error here is not clearly harmful, Petitioners "must explain why the erroneous ruling caused harm." *See Shinseki v. Sanders*, 556 U.S. 396, 410 (2009).

They did not do so. Three years on from the relevant hearing, they still haven't. Petitioners have never said what they want Dr. Fino to testify about that was not already in the report he submitted. They did not at the hearing. They did not in their motion for reconsideration. They did not in their brief to the BRB. And they did not in their brief to us. Nor have they explained how Dr. Fino's testimony (whatever it would be) might support their claim. Because they have not explained how the ALJ's rulings below prejudiced them, any error was harmless.

B.

Petitioners' reliance on out-of-circuit precedent fares no better. In *Miller*, the Third Circuit vacated a benefits award because the ALJ had not allowed the mine operator, North American, a chance to respond to the medical evidence that ultimately justified the award. 870 F.2d at 949. The claimant there, Miller, submitted a medical examination to the ALJ without providing the same to North American until after the twenty-day deadline had passed. *See id.* The ALJ's subsequent refusal either to accept a rebuttal report North American offered at the hearing or to allow a post-hearing deposition of claimant's expert left the operator "no opportunity" to respond. *Id.* This expert report was "of critical importance," since it was the only expert report the ALJ considered when analyzing whether Miller was "totally disabled." *Id.* at 949–50, 952 n.1.

So, on its facts, *Miller* is distinguishable. There, the ALJ barred North American from rebutting an adverse witness, while here, Manalapan Mining sought to depose its own expert after

they had already submitted his report into the record. In addition, Mrs. Burkhart's evidence is older, and she gave it to Petitioners sooner. Mrs. Burkhart provided her evidence more than a month before the twenty-day rule became effective and the deadline for the other side to respond without special permission passed. *Compare* (S.A. at 21), *with Miller*, 870 F.2d at 949. And the documents she provided, which overlapped with Petitioners' own submission, were more than two years old. The relevant expert report in *Miller*, by contrast, did not exist until less than one month before the hearing. *See Miller*, 870 F.2d at 949.

Finally, the unrebutted expert report in *Miller* was the only medical report that the ALJ cited when considering whether Miller was totally disabled. *Id.* at 949–50. The ALJ here, after consulting Dr. Fino's expert report and his evaluation of Mr. Burkhart's pulmonary function test, determined that both were "not well reasoned" and gave each "little weight." (App. at 71–72; 75–77.) So while the challenged evidence in *Miller* was determinative, Petitioners seek to introduce gratuitous testimony from an expert whose other submissions had little probative value. The ALJ here not only considered the other side's expert reports, but it found them more convincing.

In sum, *Miller* does not help Petitioners because *Miller* looks nothing like this case.

## V.

The ALJ below did not abuse his discretion when he denied Petitioners' request for a post-hearing deposition. And nothing in Petitioners' selected case suggests they are entitled to the post-hearing deposition they seek. So we **DENY** the petition for review.